(No. 3428— ▆▆▆▆▆▆)

MARY ELLEN HEWLETT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

*Rehearing denied September 14, 1943.*

PENCE B. ORR, for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This claim was filed on December 14, 1939, and is for an award in the sum of $10,000.00 for damages sustained by claimant by the death of her husband alleged to have been caused by the injection of defective anti-typhoid serum, or the negligent injection of anti-typhoid serum.

Claimant was appointed administratrix of the estate of her husband, Roy Fewtrell Hewlett, by the Probate Court of Will County, Illinois, on December 4, 1939. She files as such administratrix.

The complaint alleges that deceased was employed for more than twenty years continuously prior to his death as a guard at the Northern Illinois Penitentiary at Joliet, Illinois; that deceased was in good health and not suffering from coronary thrombosis or any other disease of the heart, prior to the injection of said anti-typhoid serum; that during the months of October and November the respondent, by its officers, agents or employees, acting with authority, directed and compelled the deceased, without his consent, to be inoculated with a defective anti-typhoid serum; that shortly after the injection and as a direct result thereof, deceased became ill and was disabled from performing his duties. That as a result of said illness deceased was compelled to call upon the services of a physician, but notwithstanding the illness caused by the first injection, a second and third injection were forced into deceased's system, body and blood stream causing deceased to become progressively more ill and disabled. That after the third injection deceased became violently ill and shortly thereafter died on the 10th day of November, 1939, all from the ill

effects of said defective serum or the manner in which it was administered; that deceased's death did not arise from his occupation except that injections of serum were forced upon him because he was employed by respondent and that his death was not brought about by any other contributing cause except injection of defective serum or such other contributing cause as was into deceased's body, system or blood stream by said serum; that the death of deceased was brought about by the negligence of respondent in providing defective serum which was negligently administered to deceased.

The record consists of the complaint, transcript of testimony of claimant, and respondent's motion to dismiss. The evidence in the case shows that deceased was inoculated with anti-typhoid serum on October 19, October 26 and November 2, 1939, and that he died November 10, 1939. The complaint having been filed within six months after the date of the alleged accident and the evidence disclosing that deceased was an actual employee of the respondent during October and November, 1939, the requirements of Section 24 of the Compensation Act of Illinois have been complied with and the court will take jurisdiction of the claim.

The evidence further shows that all guards, employees and inmates of said state penitentiary were requested by the proper authorities to submit to inoculation with anti-typhoid serum. This order was issued during the typhoid epidemic at the Manteno State Institution, at Manteno, Illinois, although there is no evidence that an epidemic had arisen within the confines of the Joliet Penitentiary, yet it seems that this order for inoculation was necessary as a health protective measure.

While it is true that the complaint charges that the deceased was inoculated with defective serum or that the

inoculation was performed in a negligent manner, there is no evidence in the record to support such allegations. The evidence does show that no other employee or inmate, all of whom were inoculated, suffered any untoward reactions, except one person who suffered from asthma. Smaller doses were administered to him, which tends to prove that the staff physicians used care and caution in administering the serum.

The evidence further discloses that deceased's own private physician advised him to cease working during the period of inoculation. This he failed to do and the record further discloses that during that period deceased made no complaint to any person in authority at the penal institution. The evidence further discloses from medical witnesses that during the period of inoculation deceased did not have an anaphylactic reaction and the evidence shows that had that occurred death would have occurred within a short time after the injection of the serum and before the patient left the room in which he was inoculated. The deceased had three injections spaced about seven days apart and lived eight days after the last injection. Certainly it cannot be seriously contended that deceased had an anaphylactic reaction.

Dr. Paul E. Landmann, deceased's own physician was called the night of deceased's death but arrived some time after death had occurred. He issued the death certificate and gave the cause of death as coronary thrombosis, with chronic myocarditis as a contributing factor. Dr. Landmann testified that if defective serum was used, it could cause a thrombosis. There is nothing in the evidence supporting the charge that the serum used was defective. Dr. Landmann further testified that there was no way of determining what the obstruction

was and that it was just as likely that the serum inoculation had nothing whatever to do with the thrombosis.

Dr. Wayne S. McSweeney, called as a witness, testified that the injections did not cause chronic myocarditis and that chronic myocarditis would have to come on over a period of months after an acute infection of some kind. He corroborated Dr. Landmann in stating it was likely the injection had had nothing to do with the thrombosis.

Under the Workmen's Compensation Act of the State of Illinois, the burden of proof is upon the applicant to establish by a preponderance of the evidence every disputed question of fact as to his right to compensation. An award may not be based upon imagination, speculation or conjecture, but must be based upon facts established clearly by a preponderance of the evidence. This petitioner has failed to show that the coronary thrombosis from which it is admitted claimant's husband died was the result of an injury sustained in the course of his employment by the respondent or that it arose out of said employment.

And further, petitioner has failed to prove that the serum used by the staff physicians of the respondent was defective or that the inoculations were injected negligently by said staff physicians. Even though such proof were present in the record, the State, in the exercise of a governmental function, is not liable for injuries to persons resulting from the negligence of its officers, agents or employees and an award as a matter of social justice and equity cannot be allowed when the State would not be liable in law or in equity if it were suable. This has been the holding of this court in so many cases, citations are deemed unnecessary.

It is regrettable that petitioner's deceased husband died while employed by the State, but following the

precedents of this court and the many decisions of the Supreme Court of this State, we cannot grant an award.

The Attorney General representing the respondent files a motion to dismiss the complaint. This motion must be sustained. Complaint dismissed.